**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

**MAKEDA HOWARD**                                                                    **PLAINTIFF**

**V.**                                                           **CAUSE NO. 3:10-CV-00494-CWR-LRA**

**SHONDRA SHELTON AND JOHN DOE**                                    **DEFENDANTS**

<u>**ORDER**</u>

The above-styled matter is before the Court on the defendants' Motion to Dismiss.[1] The Court has duly considered the request but has concluded that good cause warrants the motion's denial.

On September 7, 2010, Makeda Howard (hereinafter "Howard"), acting *pro se*, filed suit[2] in district court against Shondra Shelton (hereinafter "Shelton") and John Doe for mental anguish connected to a fire at (and her ensuing eviction from) an apartment complex earlier that year. Magistrate Judge Linda R. Anderson granted Howard leave to proceed *in forma pauperis* on September 16, 2010, and ordered the clerk to receive summons forms from Howard, to issue process against the defendants, and to deliver the process to the United States Marshals Service, who in turn was ordered to serve process on the defendants.[3]

On September 27, 2010, the clerk of the court filed a letter from Howard providing Shelton's address and, apparently, averring that the John Doe defendant was "Redelwoods [*sic*]

---

[1] Motion to Dismiss [Docket No. 9].

[2] Complaint [Docket No. 1].

[3] Order [Docket No. 3] at 2.

1

Apt."[4]

The clerk of the court issued summonses in accordance with Judge Anderson's Order on February 1, 2011. The Marshals Service attempted to serve Shelton on February 7, 2011, but did not find her at her address. However, the deputy U. S. Marshal noted on the receipt that he "[s]poke with Ms. Shelton on phone; stated it was fine to leave with boyfriend (Javiam Morgan)[.]" The deputy marshal delivered the summons to Javiam Morgan (hereinafter "Morgan").[5] But according to the defendants, "on information and belief," Morgan soon thereafter "brought the summons to the apartment manager and told her that Shelton did not live in his apartment."[6]

On May 16, 2011, the Marshals Service likewise attempted to serve Rebelwoods Apartments. According to the deputy marshal's notes, the site manager, Chrystal Rayborn (hereinafter "Rayborn"), "stated their Dist. Mgr. does not come to this location on a regular basis. In my presence [Rayborn] called the Vice Pres., Lora Black @ 601 936-XXXX who's [*sic*] office is at 3825 Old Brandon Rd, Pearl MS and advised of my presence and notice to serve said papers. Ms. Rayborn stated that Ms. Black advised her to accept the process and scan to her,

---

[4] Letter [Docket No. 4] at 1 (hereinafter "Sept. 2010 letter").

[5] Process Receipt and Return [Docket No. 8] (hereinafter "Shelton summons") at 1. Nothing in the papers suggests how the deputy obtained Shelton's phone number, but there it is not disputed that he spoke with her.

[6] Memorandum in Support of Motion to Dismiss [Docket No. 10] at 3. Notably, the "information and belief" upon which the defendants rely does not demonstrate that Morgan was *not* Shelton's boyfriend.

which she did while I was still in her office."[7]

Without filing an answer, Shelton and Redelwoods Apartments jointly moved for dismissal on July 19, 2011. Specifically, the defendants argued that service upon Rebelwoods Apartments failed because its summons "does not properly identify the defendant" and because Rayborn "is not authorized to accept service for any individual or entity named 'John Doe.'"[8] Moreover, according to the defendants, service also was not perfected upon Shelton "as the U.S. Marshall [*sic*] simply left the summons and complaint with Shelton's boyfriend in his apartment."

## ANALYSIS

Service of process upon a defendant in a federal lawsuit is not so simple as delivering a Christmas card. Federal law sets forth requirements for plaintiffs that are meticulous – and sometimes befuddling – even for a seasoned attorney.

Among other things, Rule 4 of the Federal Rules of Civil Procedure requires that "[a] summons must . . . name . . . the parties[.]"[9] Furthermore, Rule 4 lists specific ways in which service is to be performed, depending on the nature of the defendant. For example, "an individual . . . may be served . . . by . . . delivering a copy of the summons and complaint to the individual personally . . . [or] leaving a copy of each at the individual's dwelling or usual place of abode

---

[7] Process Receipt and Return [Docket No. 7] (hereinafter "John Doe summons") at 1-2. The Court has redacted the final four digits of the telephone number.

[8] Motion to Dismiss at 2.

[9] Fed. R. Civ. P. 4(a)(1)(A).

3

with someone of suitable age and discretion who resides there[.]"[10] And in the case of a suit against a corporation, the plaintiff may comply with Rule 4's service requirements "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to received service of process . . . ."[11]

The Court has little difficulty in determining that service upon Shelton satisfied Rule 4. The defendants argue that the marshal "simply left the summons and complaint with Shelton's boyfriend in his apartment," but even if true, that contention does not suggest that service was insufficient. The Fifth Circuit has held that Rule 4's "provision concerning usual place of abode should be liberally construed to effectuate service if actual notice has been received by the defendant"[12] and that this question is to be "consider[ed] . . . from a practical standpoint."[13] Notwithstanding Shelton's apparent disagreement with Morgan regarding where exactly she abided, even the defendants do not contend that the attempt at service deprived Shelton of notice. Obviously, mere notice will not suffice to save an otherwise flawed service,[14] but when notice exists, the rest of Rule 4(e)(2)(B)'s terms should be broadly construed,[15] and this Court is satisfied that the apartment of Shelton's boyfriend was, under these circumstances, a usual place

---

[10] Fed. R. Civ. P. 4(e)(2)(A)-(B).

[11] Fed. R. Civ. P. 4(h)(1)(B).

[12] *Nowell v. Nowell*, 384 F.2d 951, 953 (5th Cir. 1967) (citation omitted).

[13] *Id. See also Williams v. Capital Transit Co.*, 215 F.2d 487, 490 (D.C. Cir. 1954) (provision regarding usual place of abode "should be liberally construed").

[14] *Mid-Continent Wood Prods., Inc. v. Harris*, 936 F.2d 297, 301 (7th Cir. 1991).

[15] *O'Meara v. Waters*, 464 F. Supp. 2d 474, 476 (D. Md. 2006).

of abode – particularly in light of the fact that Shelton herself told the marshal to complete service by leaving the summons with Morgan. To be sure, she could excuse the marshal service from the exactness of service by requesting that he leave the process with her boyfriend or any one else.

With regard to Rebelwoods Apartments, the defendants argue that dismissal is appropriate both because of the form of the process and the method by which it was served. Specifically, the defendants argue that Rebelwoods Apartments' summons "does not properly identify the defendant" and because Rayborn "is not authorized to accept service for any individual or entity named 'John Doe.'"[16]

The latter argument is self-obvious; no one is authorized to accept service for John Doe because, for the purposes of civil procedure, there is no such person. This contention, however, is no basis for dismissing the Howard's complaint.[17]

But the former suggestion is correct. The summons at issue plainly is directed to "John Doe" and not to Rebelwoods Apartments.[18] "Under . . . the Federal Rules of Civil Procedure, a summons must include the names of the parties, among other things, and must be directed to the

---

[16] Motion to Dismiss at 2.

[17] The Court notes that the defendants' motion did *not* argue that, to the extent that the summons at issue attempted service upon Rebelwoods Apartments, Rayborn was not authorized to accept on Rebelwoods Apartments' behalf. Apparently, the defendants did not urge this point since its vice president instructed the employee to accept the process. Whether this defense has now been waived is not a matter currently before the Court, and for now, the Court expressly declines to address the question. *See* Fed. R. Civ. P. 12(h).

[18] John Doe summons at 1.

5

defendant being sued."[19] Still, as the Court already has indicated herein, a "plaintiff's *pro se*

status . . . entitles [her] to a certain degree of leniency so as to ensure that [her] case is justly

resolved on its merits rather than on the basis of procedural technicalities to the extent

possible."[20] Rebelwoods Apartments' participation in this litigation demonstrates that notice has

been established, notwithstanding the technical imperfections associated with service. And while

notice alone does not satisfy Rule 4,[21] it does trigger a liberal construction of the Rule's

requirements.[22]

      Here, the John Doe summons' only defect alleged – and only defect apparent – is its

reference to John Doe instead of Rebelwoods Apartments. But the summons did contain this

matter's correct cause number, and inspection thereof in the office of the court specified in the

Complaint would have revealed the September 10 letter in which Howard clarified that John Doe

was, in fact, Rebelwoods Apartments.

      This matter is complicated by the fact that Howard is proceeding *in forma pauperis*,

which interposes unusual obligations. In an IFP case, the clerk's office assists the plaintiff in

carrying out some of its procedural duties; in particular, "[o]nce the IFP plaintiff has taken

reasonable steps to identify the defendant(s), together Rule 4 and [28 U.S.C. § 1915] require the

---

[19] *Bowman v. Sanofi-Aventis U.S.*, 2009 WL 5083431, *1 (W.D. Tex. 2009). *But see id.* ("[P]rocess *may be* insufficient if the summons and complaint refer to a party in the wrong name.") (emphasis added).

[20] *Poulakis v. Amtrak*, 139 F.R.D. 107, 109 (N. D. Ill. 1991). *See Speelman v. United States*, 461 F. Supp. 2d 71, 74 (D.D.C. 2006).

[21] *Supra* at n.14.

[22] *Supra* at n.15.

court to issue plaintiff's process to a United States Marshal who must in turn effectuate service upon the defendants."[23]

In the case at bar, Howard took reasonable steps to identify the John Doe defendant in her Complaint. On September 27, 2010, Howard wrote a letter to the clerk of the court informing that office that the identity of her John Doe was "Redelwoods Apt." [*sic*].[24] In February 2011, on summons forms that appear to bear her handwriting, Howard again identified her defendant as "John Doe,"[25] but she included the same physical address in Dallas, Texas, as had accompanied her identification of Rebelwoods Apartments months before.

The Court is satisfied that these efforts, while not a model by which civil procedure students are likely to be instructed any time soon, constitute "reasonable steps to identify the defendant,"[26] particularly when cast against the principle that a "plaintiff's *pro se* status . . . entitles [her] to a certain degree of leniency so as to ensure that [her] case is justly resolved on its merits rather than on the basis of procedural technicalities to the extent possible."[27]

The question of whether to dismiss for failure to effect service is one in which a district court enjoys some discretion,[28] and so long as no legal authority inflexibly requires otherwise,

---

[23] *Cornish v. Texas Bd. of Criminal Justice Office of the Inspector*, 141 Fed. Appx. 298, 300-01 (5th Cir. 2005).

[24] Sept. 2010 letter at 1.

[25] Summons [Docket No. 5] at 2.

[26] *Cornish*, 141 Fed. Appx. at 300.

[27] *Poulakis v. Amtrak*, 139 F.R.D. 107, 109 (N. D. Ill. 1991). *See Speelman v. United States*, 461 F. Supp. 2d 71, 74 (D.D.C. 2006).

[28] *Id.* at 301.

this Court is loathe to deprive a *pro se* party of its day in court because of imperfect, but ultimately effective, navigation of the Rules of Civil Procedure.[29]

## CONCLUSION

Rule 4 is a means to an end; it does not exist for its own sake. Although its demands are specific, its ultimate goal is simply to notify a defendant that a lawsuit has been filed against it. And when a *pro se* plaintiff achieves that goal despite failing to adhere to Rule 4's every rigor, this Court will not favor dismissals based on simple technicalities. The Rules of Civil Procedure "should be construed and administered to secure the *just*, speedy, and inexpensive *determination* of every action and proceeding."[30] In this case, that goal is best achieved by permitting the parties to move forward toward an evaluation of the case's merits.

Therefore, the motion to dismiss is denied.

SO ORDERED this Thirtieth day of August 2011.


/s/ *Carlton W. Reeves*
Hon. Carlton W. Reeves
United States District Court Judge

---

[29] In their Reply to Motion to Dismiss [Docket No. 14], the defendants correctly note that the plaintiff has an obligation to amend the Complaint if she expects to proceed against certain parties. Reply at 3 n.1. Because the Court is denying the motion to dismiss, that issue as well as the other topics typically discussed can be taken up at the Case Management Conference with the Magistrate Judge, the notice of which typically issues within 30 days of orders of this character. If the parties have not received such notice within 30 days, then they are directed to contact the Magistrate Judge's chambers.

[30] Fed. R. Civ. P. 1 (emphases added).

8